# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00700-CV

**David L. Lakey, M.D., in his Official Capacity as Commissioner of the Texas Department of State Health Services, Appellant**

**v.**

**Floyd Taylor, by his next friend, Melissa Shearer; Gabriela Hernandez, by her next friend, Melissa Shearer; Zachary Ridgeway, by his next friend, Martin J. Cirkiel; Stanley Jackson, by his next friend, Martin J. Cirkiel; Eric Hubert, by his next friend, Martin J. Cirkiel; Dennis Rainford, by his next friend, Melissa Shearer; Lidia Huerta, by her next friend, Martin J. Cirkiel; Calvin Bearden, by his next friend, Martin J. Cirkiel; Rosie King, by her next friend, Martin J. Cirkiel, and Advocacy, Incorporated, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. D-1-GN-07-000837, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## O P I N I O N

Advocacy, Incorporated and the individual appellees, persons with mental illness who have been found incompetent to stand trial, sought declaratory and injunctive relief against the Commissioner of the Texas Department of State Health Services, alleging that the Department's policy and practice regarding the provision of competency-restoration treatment to persons who have been found incompetent to stand trial is unconstitutional.[1] In this interlocutory appeal, the Commissioner contends that the trial court erred in denying his plea to the jurisdiction, filed on the

---

[1] Except where it is necessary to talk about the individual appellees separately, we will refer to the appellees collectively as "Advocacy."

grounds of sovereign immunity and standing. Because we have determined that sovereign immunity has been waived and that Advocacy and the individual appellees have standing to bring their underlying claims, we affirm the trial court's order denying the plea to the jurisdiction.[2]

## BACKGROUND

The constitutional claim in this case involves the treatment of criminal defendants who have been found incompetent to stand trial. If such a defendant is found ineligible for bail, the trial court is required to commit the defendant to a mental health facility or residential care facility for a period of up to 120 days "for further examination and treatment toward the specific objective of attaining competence to stand trial." *See* Tex. Code Crim. Proc. art. 46B.073(b) (West Supp. 2008). If the defendant is charged with a violent offense other than simple assault, the defendant must be committed to the maximum security unit of a mental-health facility. *Id.* art. 46B.073(c).

The Department operates the state mental health hospital system for both forensic commitments—commitments resulting from a criminal defendant being found incompetent to stand trial—and civil commitments.[3] The legislature appropriates funds to the Department to operate a designated number of state hospital beds, and it is within the Department's discretion to determine

---

[2] The trial court's order did grant the plea to the jurisdiction as to the Commissioner's claim that Advocacy was not entitled to attorney's fees. Advocacy did not brief the issue of attorney's fees on appeal and we express no opinion regarding that particular portion of the trial court's order.

[3] While not at issue in the present case, commitments of an individual acquitted of a crime by reason of insanity are also considered forensic commitments.

2

how many of the total state hospital beds will be used for forensic commitments and how many will be used for civil commitments.[4]

In 2005, the number of persons requiring forensic commitments increased dramatically, exceeding the number of state hospital beds that had been designated for forensic commitments. To address this problem, the Department created a "clearinghouse list," which actually consists of two separate waiting lists: the state hospital waiting list for defendants who have not been charged with a violent crime, and the maximum security hospital waiting list for defendants charged with violent crimes. The clearinghouse list makes all forensic commitments to state hospitals contingent on the availability of space. Individuals on the clearinghouse list must remain in county jail until a state hospital bed is available before they can be transferred to begin competency-restoration treatment.

In September 2007, the Department revised its clearinghouse policy to cap the number of forensic commitment beds based on the State Hospital Allocation Methodology (SHAM). Under the SHAM, each county mental health authority has a certain amount of allocated funding, representing a certain number of state hospital beds. If a county overspends its allocated funds, an administrative hold will prevent the county from committing more criminal defendants until the county no longer exceeds its allocated funding.

---

[4] In the 2007 legislative session, the legislature appropriated sufficient funds to allow the Department to operate a total of 2,477 state hospital beds for both forensic and civil commitments.

3

Advocacy, a group created to advocate on behalf of individuals with mental illness,[5] and a number of individuals who were required to wait in a county jail until a bed was available at a forensic-commitment facility, brought suit against the Commissioner, seeking declaratory and injunctive relief. Advocacy asserted that the Department's "delay in accepting prompt custody and providing competency restoration treatment" forces persons awaiting forensic commitments to "spend months improperly incarcerated in jails, without treatment," and that this delay violates the due-course-of-law provision of the Texas Constitution. Advocacy requested an injunction requiring the Department to provide competency restoration treatment within a reasonable period of time, not to exceed three days, and a declaration that the Department's current policies, procedures, and practices regarding the clearinghouse list violate the Texas Constitution.

The Commissioner filed a plea to the jurisdiction, asserting that neither the individual appellees[6] nor Advocacy had standing to bring their claims and that sovereign immunity barred suit. The trial court denied the plea to the jurisdiction and this appeal followed.

## STANDARD OF REVIEW

Because this is an appeal from a plea to the jurisdiction, "we will review the face of appellants' pleadings to determine whether they show a lack of jurisdiction or whether the pleadings,

---

[5] Advocacy is a protection and advocacy organization created under the Protection and Advocacy for Mentally Ill Individuals (PAMII) Act, 42 U.S.C. §§ 10801-10851 (West 2005), and authorized to "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State." *Id.* § 10805(a)(1)(B).

[6] While a number of individual plaintiffs have been substituted, for simplicity we will refer to the individual plaintiffs at various stages of this litigation, when necessary, as the individual appellees.

4

if liberally construed, favored jurisdiction." *Atmos Energy Corp. v. Abbott*, 127 S.W.3d 852, 855 (Tex. App.—Austin 2004, no pet.). Whether a trial court has subject-matter jurisdiction is a question of law we review de novo. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). If the pleadings do not affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004). If the pleadings affirmatively negate jurisdiction, then a plea to the jurisdiction may be granted without allowing an opportunity to amend. *Id.* at 227. Unless a pled jurisdictional fact is challenged and conclusively negated, it must be taken as true for purposes of determining subject-matter jurisdiction. *City of Austin v. Leggett*, 257 S.W.3d 456, 462 (Tex. App.—Austin 2008, pet. denied). In reviewing a plea to the jurisdiction, an appellate court does not look to the merits of the case but considers only the pleadings and evidence relevant to the jurisdictional inquiry. *Miranda*, 133 S.W.3d at 227.

## DISCUSSION

*Mootness*

As a preliminary matter, the Commissioner argues that this litigation has been rendered moot by recent policy changes and legislative amendments regarding forensic commitments. The mootness doctrine limits courts to deciding cases in which an actual controversy exists. *Camarena v. Texas Employment Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988). A case becomes moot if a controversy ceases to exist between the parties at any stage of the legal proceedings, including the appeal. *In re Kellogg Brown & Root*, 166 S.W.3d 732, 737 (Tex. 2005).

5

During the 2007 legislative session, the legislature set aside additional funding for pilot programs aimed at reducing the number of offenses caused by persons with mental illness and amended article 46B of the code of criminal procedure by, among other things, clarifying situations in which outpatient services could be used in lieu of a forensic commitment, shortening time frames regarding competency hearings, and removing the requirement that defendants charged with simple assaults must be admitted to maximum-security hospitals. *See* Act of May 17, 2007, 80th Leg., R.S., ch. 1307, 2007 Tex. Gen. Laws 4385, 4385-95. Also in 2007, the Department revised its policies so that it no longer limited the number of available state hospital beds that could be used for forensic commitments, as opposed to civil commitments.

The Commissioner claims that as a result of these legislative and administrative changes, the waiting period for criminal defendants slated for forensic commitment has dropped significantly, and that therefore this appeal is now moot. We disagree. While the Commissioner asserts that the number of criminal defendants on the clearinghouse list has been reduced, he does not contend that it has been eliminated. At the hearing on the plea to the jurisdiction, Kenny Dudley, director of the state hospital system, testified that after the 2007 legislative amendments, the clearinghouse list contained "approximately 200" criminal defendants and was "pretty stable." Dudley further testified that at that time, the average wait for criminal defendants waiting to get into a maximum-security hospital was approximately six months, and that the average wait for the remaining state hospitals was "a little less, but probably pretty close to six months."

Furthermore, the Department may not moot this appeal by voluntarily abandoning the policy at issue "without any binding admission or extrajudicial action that would prevent a

6

recurrence of the challenged action." *Texas Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 849 (Tex. App.—Austin 2002, pet. denied); *see also Bexar Metro. Water Dist. v. City of Bulverde*, 234 S.W.3d 126, 131 (Tex. App.—Austin 2007, no pet.). Where a policy is challenged as unconstitutional, voluntary cessation of such policy, without an admission or judicial determination regarding its constitutionality, is not sufficient to render the constitutional challenge moot. *Del Valle Indep. Sch. Dist. v. Lopez*, 863 S.W.2d 507, 511 (Tex. App.—Austin 1993, writ denied). As a result, we hold that neither the 2007 legislative amendments nor the Department's policy changes have rendered this appeal moot.

Having resolved the mootness issue in Advocacy's favor, we now turn to the Commissioner's contention that the trial court should have granted its plea to the jurisdiction on the issues of standing and sovereign immunity.

*Individual Standing*

The Commissioner argues that because the individual appellees are no longer on the clearinghouse list and have been transferred to state hospitals for competency-restoration treatment, their claims are moot and they do not have standing to bring this appeal. While the individual appellees admit that they are no longer on the Department's clearinghouse list, they claim to fall within an exception to the mootness doctrine for claims that are capable of repetition, yet evading review. *See Blum v. Lanier*, 997 S.W.2d 259, 264 (Tex. 1999). This exception applies to claims where (1) the challenged act is of such short duration that the appellant cannot obtain review before the issue becomes moot and (2) there is a reasonable expectation that the same action will occur again if the issue is not considered. *Id.*

7

The Commissioner concedes that the challenged act in this case evades review, stating, "Without doubt, the individual plaintiffs' claims meet the first prong of this test." The Commissioner argues, however, that the individual appellees cannot meet the capable-of-repetition requirement because the possibility that an individual appellee may be charged with another crime and again be confined to await a forensic commitment is too speculative to confer standing. *See Williams v. Lara*, 52 S.W.3d 171, 184-85 (Tex. 2001) (holding that former inmates did not have standing to bring constitutional challenge regarding prison policies because court could not assume that plaintiffs would commit another crime that would lead to incarceration).

We assume that an average criminal defendant will prevent their own recidivism, as they are required by law to do. *See O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) ("We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners."); *Williams*, 52 S.W.3d at 185 (refusing to "assume that [plaintiffs] will commit another crime"). However, unlike the plaintiffs in *Williams* or *O'Shea*, the individual appellees are not ordinary criminal defendants, but individuals suffering from mental illness who have been found incompetent to stand trial, and who, in the case of two of the individual appellees, have been arrested, found incompetent, and ordered to a state hospital for competency-restoration treatment multiple times in the past. Furthermore, criminal defendants waiting on the Department's clearinghouse list have not yet been convicted of a crime. Thus, even if we were to assume that the individual appellees had the ability to prevent their own recidivism, it does not necessarily follow that they would never again find themselves charged with a crime and in need of competency-restoration treatment. In light of these

8

circumstances, we hold that the individual appellees have shown that there is a reasonable expectation and demonstrated probability that they will again be arrested, found incompetent to stand trial, and placed on the Department's clearinghouse list. As a result, the individual appellees have standing to bring their claim under the capable-of-repetition-yet-evading-review exception to the mootness doctrine.

*Associational Standing*

The Commissioner further contends that Advocacy lacks standing to bring this appeal, while Advocacy claims that it has both organizational and associational standing.[7] In order to establish standing to bring suit on behalf of its constituents, an association must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *see also Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 447 (Tex. 1993) (adopting *Hunt* test for associational standing).

Advocacy is a protection and advocacy organization created by federal law under the Protection and Advocacy for Mentally Ill Individuals (PAMII) Act, 42 U.S.C. §§ 10801-10851 (West 2005), and authorized to "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment" in Texas. *Id.* § 10805(a)(1)(B). For purposes of the *Hunt* associational-standing test, constituents of

---

[7] In light of our holding that Advocacy has associational standing, we express no opinion regarding whether Advocacy has organizational standing to bring this appeal.

9

an organization created under the PAMII Act have been considered by federal courts to be the functional equivalent of members. *See Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1110 (9th Cir. 2003); *Doe v. Stincer*, 175 F.3d 879, 886 (11th Cir. 1999). The individual appellees fall within Advocacy's constituency by virtue of having been examined by a qualified mental health professional and found to be unable to communicate with defense counsel or understand the criminal proceedings against them. *See* 42 U.S.C. § 10802(4) (defining "individual with a mental illness" to include individuals with "a significant mental illness or emotional impairment, as determined by a mental health professional"); Tex. Code Crim. Proc. Ann. arts. 46B.022, .024 (West 2006). Because we have already determined that the individual appellees, members of Advocacy's constituency, have standing to sue in their own right, it necessarily follows that the first prong of the associational-standing test is satisfied.

To satisfy the second prong of the test, Advocacy must show that the interests it seeks to protect in bringing this suit are germane to its associational purpose. The purpose of Advocacy's enabling statute is "to ensure that the rights of individuals with mental illness are protected" and to establish organizations, like Advocacy, that will, among other things, "protect and advocate the rights of such individuals through activities to ensure the enforcement of the Constitution and Federal and State statutes." 42 U.S.C. § 10801(b). Under federal law, Advocacy is authorized to "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State." *Id.* § 10805(a)(1)(B).

According to the Commissioner, the interests of the individual appellees and other criminal defendants awaiting forensic commitment while confined in county jails are not germane

10

to Advocacy's purpose because these individuals are not "receiving care or treatment in the State."

*Id.* However, the federal regulations related to the PAMII Act define "care or treatment" as:

> services provided to prevent, identify, reduce or stabilize mental illness or emotional impairment such as mental health screening, evaluation, counseling, biomedical, behavioral and psychotherapies, supportive or other adjunctive therapies, medication supervision, special education and rehabilitation, even if only "as needed" or under a contractual arrangement.

42 C.F.R. § 51.2. Under this broad definition, a criminal defendant who has been provided with a mental health screening or evaluation is considered to be receiving care or treatment in the State. Texas county jails are required to conduct a mental health screening on each detainee upon admission. *See* 37 Tex. Admin. Code § 273.5(b) (requiring mental health screening to be "completed immediately on all inmates admitted"); *see also id.* § 273.1 (requiring owner or operator of county jail to "provide medical, *mental*, and dental services" in accordance with an approved health services plan) (emphasis added). While county jails do not provide the type of competence-restoration treatment that individuals awaiting forensic commitment require, they do provide a minimal level of "care or treatment" that is sufficient to give Advocacy authority to sue on behalf of individuals confined therein after being found incompetent to stand trial. As a result, Advocacy meets the second prong of the associational-standing test.

In order to meet the third and final prong of the associational-standing test, Advocacy must show that neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See Hunt*, 432 U.S. at 343. "If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be

11

supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Id.* Where an association "seeks only prospective relief, raises only issues of law, and need not prove the individual circumstances of its members to obtain that relief," it satisfies the third prong of the associational-standing test. *Texas Ass'n of Bus.*, 852 S.W.2d at 448.

In the present case, Advocacy seeks only declaratory and injunctive relief to eliminate the delay between an incompetency finding and the initiation of competency-restoration treatment.[8] This remedy, if granted, will inure to the benefit of individuals who, as previously discussed, are members of Advocacy's constituency by virtue of having been found incompetent to stand trial and forced to remain confined in county jails. Advocacy does not seek damages on behalf of its individual members, but only prospective relief. Furthermore, Advocacy, in alleging that an incompetent criminal defendant's constitutional rights are violated any time they are confined in county jail for over three days before receiving competency-restoration treatment, brings a facial constitutional challenge that does not require proof of any individual appellee's circumstances. As a result, we hold that Advocacy meets the third prong of the test, and therefore has associational standing to bring this suit.

*Sovereign Immunity*

The Commissioner argues that even if Advocacy and the individual appellees have standing, their suit is barred by sovereign immunity. Absent an express waiver of sovereign immunity, the State, its agencies, and its officials are generally immune from suit. *State v. Holland*,

_____

[8] As previously noted, Advocacy's request for attorney's fees was dismissed and Advocacy has not appealed that dismissal.

221 S.W.3d 639, 643 (Tex. 2007). However, sovereign immunity does not shield a governmental entity from a suit for equitable relief for a violation of constitutional rights. *See City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148-49 (Tex. 1995) ("[S]uits for equitable remedies for violation of constitutional rights are not prohibited."); *see also* Tex. Const. art. 1, § 29 ("[W]e declare that everything in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void."). The Commissioner contends that sovereign immunity bars the present case because Advocacy has failed to make allegations that would, if true, constitute the violation of any recognized constitutional right.

Sovereign immunity from suit is properly asserted in a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225-26. In reviewing a plea to the jurisdiction on the grounds of sovereign immunity, a court may not weigh the merits of the claim, *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002), but may consider the plaintiffs' pleadings and the evidence pertinent to the jurisdictional inquiry in order to determine whether the particular facts of the case come within the scope of the alleged waiver. *State Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001) (holding that "mere reference to the Tort Claims Act" without evidence that claims actually implicate Tort Claims Act is insufficient to establish jurisdiction).

In attempting to show that Advocacy's claim does not fall within the scope of a constitutional violation, the Commissioner argues that the due-course-of-law provision of the Texas Constitution does not give a forensic detainee the right to be transferred from county jail to competency-restoration treatment within three days. To decide this issue would require us to venture

too far into the merits of the underlying case, and we decline to do so. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) (holding that plea to jurisdiction does not "authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction"). We will instead look to the substance of the pleadings, construed liberally in favor of the plaintiffs, *see Miranda*, 133 S.W.3d at 226, to determine whether Advocacy has alleged a constitutional claim.

In support of its due-course-of-law claim, Advocacy asserts that persons who have been found incompetent to stand trial, but who have not been convicted of any crime, have a liberty interest in their freedom from incarceration and in timely receiving restorative treatment, citing *Mink*, 322 F.3d at 1121-22 (holding that refusal to admit incapacitated criminal defendants into competency-restoration treatment in timely manner violates substantive due process) and *Jackson v. Indiana*, 406 U.S. 715, 738 (1972) (holding that, to avoid violating due process, criminal defendant confined after being found incompetent to stand trial "cannot be held more than the reasonable period of time necessary" to determine whether he can regain competency). The Department, while arguing that *Mink* has been superceded, agrees in its reply brief that under *Jackson*, forensic detainees have a liberty interest in not being placed in forensic detention indefinitely. As Advocacy points out in its brief, the director of the state hospital system testified at the plea to the jurisdiction that under the Department's SHAM policy, persons from counties that have been placed on an administrative hold could wait in jail indefinitely for a forensic commitment. In light of the authorities cited by Advocacy, as well as forensic detainees' recognized liberty interest

14

in not being incarcerated indefinitely, we cannot say that Advocacy's claims are so far afield of any recognizable constitutional right as to fall outside the scope of a waiver of sovereign immunity.

Without determining whether Advocacy's claims will ultimately succeed, we hold that the allegations are sufficient to invoke the waiver of sovereign immunity for constitutional claims. *See Bouillon*, 896 S.W.2d at 148-49. Accordingly, the trial court did not err in denying the Commissioner's plea to the jurisdiction on the basis of sovereign immunity.[9]

## CONCLUSION

Because we have determined that the trial court has subject-matter jurisdiction over this suit, we affirm the trial court's order denying the Commissioner's plea to the jurisdiction.

_____

Diane M. Henson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed: November 6, 2008

_____

[9] The Commissioner also argues that even if Advocacy *had* raised a constitutional claim, injunctive relief would be improper in this case because it would interfere with the imposition of criminal penalties, citing *State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994) (holding that equity court could not declare criminal statute unconstitutional and enjoin its enforcement). However, unlike the plaintiffs in *Morales*, Advocacy does not seek to enjoin the enforcement of any penal statute, but rather the Department's policy and practice regarding the transportation and treatment of criminal defendants who have been found incompetent to stand trial. The fact that Advocacy's claims relate to the constitutional rights of criminal defendants does not place them outside a civil court's equity jurisdiction. *See id.* at 945-46; *Passel v. Fort Worth Indep. Sch. Dist.*, 440 S.W.2d 61, 64 (Tex. 1969) (injunctive relief was within equity jurisdiction where plaintiffs did not seek to prevent enforcement of criminal statute, but rather enforcement of agency regulation implementing that statute).

15