# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00207-CV

**David L. Lakey, M.D., in his official capacity as Commissioner of the Texas Department of State Health Services, Appellant**

**v.**

**Floyd Taylor, by his next friend, Melissa Shearer; Gabriella Hernandez, by her next friend, Melissa Shearer; Zachary Ridgeway, by his next friend, Martin J. Cirkiel; Stanley Jackson, by his next friend, Martin J. Cirkiel; Eric Hubert, by his next friend, Martin J. Cirkiel; and Disability Rights Texas, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. D-1-GN-07-000837, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## O P I N I O N

Disability Rights Texas, along with nine individuals, criminal defendants who have been found incompetent to stand trial (collectively, the Plaintiffs), sought declaratory and injunctive relief against the Commissioner of the Texas Department of State Health Services, claiming that the Department's system of prioritizing the transfer of incompetent defendants to hospitals for competency-restoration treatment is unconstitutional. The Plaintiffs and the Commissioner filed competing motions for summary judgment on the Plaintiffs' claims, and upon considering the motions, the trial court granted summary judgment in favor of the Plaintiffs and denied the Commissioner's motion. The Commissioner filed this appeal. We conclude that the Department's system, which causes incompetent defendants to wait before being provided any competency-

restoration treatment, is not unconstitutional on its face. Accordingly, we reverse the trial court's grant of summary judgment in favor of the Plaintiffs, vacate the trial court's permanent injunction, and render judgment in favor of the Commissioner.

**BACKGROUND**

*Chapter 46B*

The criminal trial of a defendant who is legally incompetent to assist in his or her own defense violates fundamental interests of due process. *Dusky v. United States*, 362 U.S. 402, 402 (1960); *McDaniel v. State*, 98 S.W.3d 704, 709 (Tex. Crim. App. 2003). To ensure protection of this right, Texas has codified the constitutional test for competency and established statutory procedures for competency determinations in criminal courts. *See* Tex. Code Crim. Proc. art. 46B.003(a)(1), (2) ("A person is incompetent to stand trial if the person does not have . . . sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or . . . a rational as well as factual understanding of the proceedings against the person.").

Chapter 46B of the Texas Code of Criminal Procedure governs the procedures by which a defendant may be found incompetent to stand trial and the consequences that flow from such a finding.[1] *Id*. arts. 46B.001-.171. Under article 46B.071, once a defendant is found incompetent to stand trial, the trial court has two options aimed at restoring the defendant's competency. *Id*.

---

[1] Chapter 46B has been amended since this case was filed. *See* Act of May 22, 2013, 83d Leg., R.S., ch. 797, 2013 Tex. Sess. Law Serv. 2013, 2013-16; Act of May 24, 2011, 82d Leg., R.S., ch. 822, 2011 Tex. Gen. Laws 1894, 1894-1901; Act of May 17, 2007, 80th Leg., R.S., ch. 1307, 2007 Tex. Gen. Laws 4385, 4385-95. However, we cite to the current versions of the applicable statutes for convenience because there have been no intervening amendments that are material to our disposition of the issues on appeal.

2

art. 46B.071 (options on determination of incompetency). Absent a determination that the defendant is unlikely to be restored to competency in the foreseeable future, the court must either (1) commit the defendant to a mental health facility or residential care facility for treatment aimed at restoring the defendant's competency, or (2) release (or continue the release of) the defendant on bail, subject to the defendant's participation in an outpatient treatment facility for purposes of restoring competency.[2]  *Id*.  However, release with outpatient treatment is an option only if the court first determines that the defendant "is not a danger to others and may be safely treated on an outpatient basis." *Id*. art. 46B.072 (release on bail).  Otherwise, the trial court must commit the defendant to a mental health facility or residential care facility for examination and treatment for the purpose of restoring the defendant's competency to stand trial.  *Id*. art. 46B.073.  It is the process by which committed defendants are transferred to facilities for competency-restoration treatment that is the subject of this dispute.[3]

---

[2] Under the current version of Chapter 46B, if it is determined at this stage that the defendant is incompetent to stand trial and is unlikely to be restored to competency in the foreseeable future, the trial court shall proceed with the case as a civil commitment under subchapters E or F, depending on whether the charges have been dismissed, or release the defendant on bail as permitted under Chapter 17.  Tex. Code Crim. Proc. art. 46B.071(b); *see id*. arts. 46B.101-.117 (civil commitment: charges pending), 46B.151 (civil commitment: charges dismissed); *see also id*. arts. 17.01-.49 (bail).

[3] The facility to which the defendant is committed is required to develop a treatment program for the defendant, assess and evaluate the defendant's chances for competency restoration, and report to the trial court on the defendant's progress.  *Id*. art. 46B.077 (individual treatment program).  After the initial commitment period has expired, the defendant is returned to the committing court for a determination of whether the defendant has attained competency.  *Id*. art. 46B.084(a).  If the defendant is unable to attain competency within the statutory time limit, any subsequent court orders for commitment must be issued under the stricter, extended civil commitment process.  *Id*. arts. 46B.084(a), (e)-(f), .085; *see id*. arts. 46B.101-.117, .151.

*The Clearinghouse List*

Texas currently has ten in-patient psychiatric facilities (state hospitals), overseen by the Department, which serve four categories of patients: (1) those committed voluntarily, (2) those committed involuntarily through court-ordered civil commitments, (3) those found not guilty by reason of insanity, and (4) those criminal defendants committed for competency-restoration treatment. *See* Tex. Health & Safety Code §§ 571.006 (department powers), 576.022 (adequacy of treatment). In the years leading up to this suit, the state hospital system in Texas was consistently operating at or above maximum capacity, with an insufficient number of beds available to treat all four categories of patients needing services at any given time. In response, in 2006, the Department created the Forensic Clearinghouse List (the List), a methodology of allocating the beds available for committed defendants in the context of the entire state hospital system. It is undisputed that under this scheme, the Department denies acceptance of committed defendants on the List (committed detainees) into state hospitals until a bed becomes available for that detainee, in accordance with the List. In addition, the committed detainees remain in county jail while they wait for an available hospital bed and their subsequent transport to a state hospital so that they may begin receiving competency-restoration treatment. It is undisputed that committed detainees receive no competency-restoration treatment while they are in county jail awaiting transfer.

*The Lawsuit*

In 2007, a group of nine committed detainees who were required to wait in county jail under the List, along with Disability Rights Texas, a group created to advocate on behalf of individuals with mental illness, brought suit claiming that the system violated their rights under the

4

due course of law provision of the Texas Constitution. Specifically, the Plaintiffs claim that, as a consequence of the List, incompetent defendants who have been ordered transferred to state hospitals for competency-restoration treatment are instead waiting in county jails for weeks and sometimes months before they are transferred to state hospitals. The Plaintiffs sought a declaration that the Department's policies, procedures, and practices in using the List prevent committed detainees from receiving competency restoration treatment within a reasonable period of time and therefore violate the Texas Constitution. The Plaintiffs also sought injunctive relief requiring the Department to "promptly accept[] physical custody of [committed detainees] either at a state mental health facility or other treatment location within a reasonable period of time, not to exceed three (3) days."[4]

The Plaintiffs subsequently moved for final summary judgment. Attached to their motion, the Plaintiffs submitted evidence regarding the List, including evidence that (1) the average number of committed detainees on the waiting list in 2011 was 306; (2) committed detainees have had to wait in county jail for as long as seven months before being transferred to a state hospital; (3) in this case, the individual plaintiffs had to wait between four and seventeen weeks in county jail; (4) the county jails do not provide competency-restoration treatment; (5) individualized assessments and competency-restoration treatment are available only at the state hospitals; and (6) the state hospitals are able to restore the competency of 85% of committed defendants treated. In their motion, the Plaintiffs framed the legal issue in the following manner:

---

[4] The Commissioner filed a plea to the jurisdiction, which the trial court denied. On interlocutory appeal of that denial, this Court affirmed the decision of the trial court. *See Lakey v. Taylor*, 278 S.W.3d 6, 16-17 (Tex. App.—Austin 2008, no pet.) (*Lakey I*).

Because there is no factual dispute that the Department runs a waiting list, and, as a result, incompetent detainees wait for months in jail before the Department will admit them to a state mental health facility to receive competency restoration treatment, the only question is a legal one: whether the Department's waiting list scheme is constitutional. The answer is no, and the law is well settled. Wait listing pretrial detainees—and leaving them confined in county jails for months—violates their due course of law rights because neither the nature nor duration of the incompetent detainees' prolonged confinement in county jails bears any reasonable relation to the evaluative and restorative purposes for which the courts committed these detainees to a state mental hospital.[5]

In responding to the Plaintiffs' motion, the Commissioner did not dispute the Plaintiffs' pertinent factual allegations, including allegations that the Department maintains the List for allocating beds in state hospitals, that county jails do not provide competency-restoration treatment, and that, as a result, committed detainees wait in county jail without receiving competency-restoration treatment. Instead, the Commissioner argued that there are other factors that contribute to the length of time a committed detainee must await restorative treatment, and thus a material issue of fact exists with respect to the cause of the delay. In addition, the Commissioner argued that the Plaintiffs have not described a constitutional violation because committed detainees do not have a federal constitutional right nor, by extension, any state constitutional right to receive competency-restoration treatment. Finally, the Commissioner asserted that the Department's maintenance of the List "has a rational basis, serves legitimate government interests, and accordingly, does not run afoul of substantive due process concerns." Based on this latter argument,

---

[5] As this Court recognized in *Lakey I*, the Plaintiffs' challenge to the List is "a facial constitutional challenge that does not require proof of any individual appellee's circumstances." *Id*. at 15.

a pure question of law, the Commissioner moved for summary judgment on the Plaintiffs' claims by cross-motion.

Following a hearing on the competing motions, the trial court denied the Commissioner's motion for summary judgment and granted summary judgment in favor of the Plaintiffs. Specifically, the court stated, in relevant part:

> [1.] THEREFORE , IT IS ORDERED, ADJUDGED AN DECREED that [the Department's] policies, procedures, and practices with respect to the maintenance of a [the List] that prevents the physical custody of Plaintiffs to a state mental health facility, state-contracted forensic mental health facility or residential health facility (hereafter "State Mental Hospital") for competency evaluation and restoration treatment (hereafter "Treatment") within a reasonable period of time after Defendant receives notice of a criminal court's commitment order under Chapter 46B of the Texas Code of Criminal Procedure violates Plaintiffs' due course of law rights as guaranteed by the Texas Constitution.
>
> [2.] Accordingly, the Court hereby DECLARES AND ENTERS JUDGMENT that, as a matter of law, Defendant's failure to admit incompetent pretrial criminal defendants (hereafter "Incompetent Detainees") for treatment to a State Mental Hospital within twenty-one (21) days after Defendant receives notice of a criminal court's commitment order under Chapter 46B of the Texas Code of Criminal Procedure violates the Incompetent Detainees' due course of law rights as guaranteed by the Texas Constitution."
>
> [3.] IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [the Department] is permanently enjoined from failing to make a bed available at an appropriate State Mental Hospital under its authority for an Incompetent Detainee no later than twenty one (21) days from the date the Defendant receives notice of a criminal court's commitment order under Chapter 46B of the Texas Code of Criminal Procedure.

In three issues, the Commissioner argues that the trial court erred in granting summary judgment in favor of the Plaintiffs and in denying his motion for summary judgment. First, the Commissioner argues that, while the Texas Constitution prohibits confinement without due

7

course of law, it does not guarantee the provision of mental health care to pretrial detainees. Second, the Commissioner argues that even if the Plaintiffs were otherwise entitled to summary judgment, the trial court improperly granted as-applied injunctive relief and judicially legislated how the Department is to exercise its discretion within constitutional limits. Third, the Commissioner contends that this Court should reconsider its prior decision in this case, which concluded that both the individuals and Disability Rights Texas have standing to bring their claims.

## STANDARD OF REVIEW

Summary judgments are reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A movant is entitled to traditional summary judgment if (1) there are no genuine issues as to any material fact and (2) the moving party is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). To obtain traditional summary judgment on an opposing party's claims, the movant must conclusively negate at least one element of each of the claims or conclusively establish each element of an affirmative defense. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). On appeal, when both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary-judgment evidence presented by both sides and determine all questions presented and render the judgment the trial court should have rendered. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## ANALYSIS

At the outset, it is helpful to underscore what is not at issue in this case. We are not asked to decide whether the constitutional rights of any individual plaintiff have been violated by

8

a delay between the criminal court's declaration of incompetence and the committed detainee's transfer to a mental health facility for competency restoration. Nor are we asked to decide whether a particular amount of delay is unconstitutional. Rather, the sole issue for this Court is whether the Department's delay of a committed detainee's transfer to a state hospital for competency-restoration treatment, on its face, violates the Texas Constitution. In deciding this issue, we will examine the due course of law provision in the context of each party's arguments on appeal.

*Due Course of Law and Due Process*

As a threshold matter, we must decide if the constitutional right, as articulated by the Plaintiffs and that forms the basis of their claims, is a right recognized under the due course of law provision. According to the Plaintiffs' pleadings, their constitutional challenge is grounded solely on the due course of law provision found in Article I, Section 19 of the Texas Constitution, and they have expressly disclaimed any federal constitutional claim.

Though textually different, Texas courts generally construe the due course of law provision in the same manner as its federal counterpart, the Due Process Clause.[6] *Texas Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 658 (Tex. 2004). Both the guarantees of the due course of law provision and the Due Process Clause contain a substantive as well as a

---

[6] Neither party has argued that there is substantively any distinction between the federal Due Process Clause and the due course of law provision of the Texas Constitution as applied to this case, and both parties cite to both federal and state law in their briefs. Accordingly, we rely on both state and federal cases addressing due process issues in analyzing the validity of the Plaintiffs' constitutional claim.

9

procedural component.[7] *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 525 (Tex. 1995). Procedural due process mandates that any government action depriving a person of life, liberty, or property be implemented in a fair manner. *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). In contrast, substantive due process "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).

The Plaintiffs' claims for relief in this case turn on whether the government can constitutionally detain a charged defendant for the purpose of providing competency-restoration treatment without then promptly providing that treatment. The Department characterizes the Plaintiffs' case as a substantive due-process claim to mental health services and argues that, under *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, (1989), "neither the Due Course of Law Provisions nor the Due Process clause gives detainees a right to a particular degree, speed, or effectiveness of treatment." We agree that there is no general right to government aid under the

---

[7] The due course of law provision of the Texas Constitution provides:

> No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

Tex. Const. art. I, § 19. The federal Due Process Clause provides:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; . . . .

U.S. Const. amend. XIV, § 1.

10

Due Process Clause, "even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *See id* at 196.

In *DeShaney*, the U.S. Supreme Court considered whether a county social services department's failure to protect a child from an abusive father violated the child's substantive due process rights. *Id*. at 191-94. In holding that it did not, the Court rejected the notion that the state has a constitutional duty to affirmatively protect an individual, even when the state has specialized knowledge of the individual's circumstances or has expressed an intent to help that individual. *Id*. at 200-01. The Court went on to contrast the situation presented in *DeShaney* with that presented in its prior opinion of *Youngberg v. Romero*, 457 U.S. 307, 317 (1982). The Court explained that, unlike in *DeShaney*, *Youngberg* involved the government's placement of an individual in involuntary confinement and that "[w]hen the State takes a person into custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199-200 (citing *Youngberg*, 457 U.S. at 317). This duty does not arise "from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitations which it has imposed on [the individual's] freedom to act on his own behalf." *Id* at 200. Therefore, while there is no general right to mental health services, a duty to provide mental health services may arise when a person is involuntarily restrained by the State and the services are necessary to protect the person's safety and well-being. *Id*.; *see Youngberg*, 457 U.S. at 324 ("Respondent thus enjoys constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions and such training as may be required by these interests.").

11

In this case, the Plaintiffs' constitutional challenge is not directly governed by either *DeShaney* or *Youngberg*. The Plaintiffs do not argue that committed detainees are constitutionally entitled to a particular amount, degree, or speed of competency-restoration treatment based on the Department's expressed willingness or statutory duty to provide treatment. *Cf. DeShaney*, 489 U.S. at 200. Further, while there is at least some evidence that one or more of the individual Plaintiffs suffered from untreated mental illness while in county jail, the Plaintiffs did not plead or seek summary judgment on any as-applied claims alleging that the Department has failed to adequately protect their individual safety and well-being. *Cf. Youngberg*, 457 U.S. at 324. Rather, according to the Plaintiffs, their challenge to the List represents a substantive due-process claim bearing on the legality of their confinement based on a right that "the nature and duration of their confinement bear a reasonable relation to the purpose for which they are confined."

In analyzing the Plaintiffs' substantive due-process claim, as with any substantive due-process claim, we must balance the individual's liberty interest against the government's asserted interest in restraining that liberty. *Id.* at 320. Freedom from involuntary physical restraint has always been at the core of the liberty interest protected by the Due Process Clause from arbitrary governmental action. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Foucha*, 504 U.S. at 80. In balancing this liberty interest against the government's interest in restraining an individual pretrial, we will uphold restrictions so long as they are reasonably related to a legitimate government interest. *See Youngberg*, 457 U.S. at 320. Thus, under certain circumstances, the government may fairly infringe on an individual's liberty interest and detain individuals prior to any adjudication of guilt for a variety of reasons. If the police suspect an individual of a crime, they may arrest and

12

detain the suspect until a neutral magistrate can determine whether probable cause exists. *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). Following this determination, the government may then, for instance, deny bail and continue to detain a defendant pretrial in order to ensure his appearance if he is a flight risk, *see Bell v. Wolfish*, 441 U.S. 520, 536 (1979), or to protect the public if he is dangerous, *United States v. Salerno*, 481 U.S. 739, 747-48 (1987). Under such circumstances, the government may lawfully detain the defendant pretrial "and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell*, 441 U.S. at 536-37.

In this case, there is no dispute that the government has a compelling interest in restoring the competency of defendants so that they may fairly and quickly be brought to trial and that this interest outweighs the incompetent defendant's liberty interest in being free from confinement. Similarly, the Plaintiffs do not challenge the Department's ability to, at least initially, detain incompetent detainees pretrial for the purpose of restoring their competency for trial. Instead, the Plaintiffs argue that the *continued* detention of committed defendants without competency-restoration treatment (which the undisputed evidence shows was not occurring in county jail, only in state hospitals) when competency-restoration treatment is the sole reason for the detainee's confinement, is a violation of the committed detainees' constitutional rights. In support of their argument, Plaintiffs rely heavily on the Supreme Court's decision in *Jackson v. Indiana*, 406 U.S. 715 (1972).

*Jackson v. Indiana*

In *Jackson*, petitioner Theon Jackson, "a mentally defective deaf mute with a mental level of a preschool child," was determined to be incompetent to stand trial on robbery charges.

13

*Id* at 717-18. The trial court ordered Jackson committed to the Indiana Department of Mental Health until such time as the Department certified to the court that he was sane. *Id*. at 719. However, the record established that Jackson had been confined for three and one-half years and "sufficiently established the lack of a substantial probability that he [would] ever be able to participate fully in a trial." *Id*. at 738-39. In concluding that Jackson's indefinite confinement was unconstitutional, the Court began by recognizing that "[a]t the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Id.* at 738; *see Seling v. Young,* 531 U.S. 250, 265 (2001) ("[D]ue process requires that the conditions and duration of confinement under the Act [allowing civil commitment of sexually violent predators] bear some reasonable relation to the purpose for which persons are committed."); *Foucha*, 504 U.S. at 72 (nature of commitment must "bear some reasonable relation to the purpose for which the individual is committed"). The Court went on to hold:

> [A] person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal.

Jackson, 406 U.S. at 738.

14

Thus, *Jackson* establishes the parameters under which an incompetent defendant can constitutionally be confined for the sole purpose of regaining his competency.[8] A constitutional inquiry under *Jackson* is properly focused on (1) whether the incompetent defendant has been held for a reasonable amount of time to determine whether he will attain competency and (2) when it is believed that the defendant's competency can be attained, whether his continued commitment is "justified by progress toward that goal." *Id.* Although the issue of whether a committed detainee is actually receiving treatment to restore competency is not determinative of this inquiry (even a detainee receiving treatment can be held too long under *Jackson*), it is relevant.

An incompetent defendant's prolonged detention cannot be "justified by progress toward [the goal of restoring competency]" if he is not receiving any competency-restoration treatment. *See id.* In other words, although an incompetent defendant's pretrial detention may be initially justified by the government's interest in restoring the defendant's competency so that he may be brought to trial quickly and fairly, after some period of time with no treatment whatsoever,

---

[8] The Department argues that *Jackson v. Indiana* is solely a procedural due-process case concerning indefinite commitments and therefore has no application to the substantive due-process claim made by the Plaintiffs. We agree that *Jackson* concerns procedural due process to the extent the Court held that when the state seeks to hold a pretrial defendant longer than necessary to determine if the defendant can be restored to competency, the state must afford the procedural protections constitutionally required in a civil commitment proceeding. 406 U.S. 715, 738 (1972). However, we disagree that *Jackson* exclusively concerns procedural due process rights. Since *Jackson*, the U.S. Supreme Court has recognized that "the protections of the Due Process Clause, both substantive and procedural, may be triggered when the state, by the affirmative acts of its agents, subjects an involuntarily confined individual to deprivations of liberty which are not among those generally authorized by his confinement." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 n.8 (1989). Thus, it follows that Due Process protections, both substantive and procedural, may be triggered when an individual's involuntary confinement is, in itself, an unauthorized deprivation of liberty.

15

the government's interest in the defendant's continued confinement for that purpose no longer outweighs the defendant's liberty interest in being free from confinement. *See Foucha*, 504 U.S. at 77 (explaining that even though it was constitutional to initially commit mentally ill, dangerous person, "it could not constitutionally continue after that basis no longer existed") (citing *O'Connor v. Donaldson*, 422 U.S. 563 (1975)).[9] The lengthy pretrial detention of an incompetent defendant, without any progress at all toward the stated goal of competency-restoration treatment, is not rationally related to any legitimate governmental interest.

Based on *Jackson*, we agree that an incompetent defendant's continued detention for competency restoration must be justified by progress toward that goal, such that his due-process rights are violated if he fails to receive any competency-restoration treatment within a reasonable amount of time following the court's entry of the order of commitment. Thus, we disagree with the Department's contention that the Plaintiffs have failed to articulate any cognizable constitutional right. This conclusion, however, does not end our inquiry. Instead, we must now decide whether the Department's maintenance of the List violates this right.

---

[9] The Plaintiffs also rely heavily on *Oregon Advocacy Center v. Mink*, a case that is factually similar to this case, which held that "incapacitated criminal defendants have liberty interests in freedom from incarceration and in restorative treatment." 322 F.3d 1101, 1121 (9th Cir. 2003). To the extent *Mink* suggests that detainees have a stand-alone, due-process right to receive competency-restoration treatment based on *Jackson*, we disagree and find the Ninth Circuit's reliance on *Jackson* for this proposition unpersuasive. *See id*. Rather, as we have explained, any right that a detainee has to receive competency-restoration treatment arises from the fact that, at least in some cases, competency-restoration treatment is the state's sole justification for infringing on the detainee's liberty interest in being free from confinement.

16

*Facial Challenge*

The Plaintiffs did not plead or seek summary judgment on any claim that the constitutional rights of any individual plaintiffs have been violated as a result of the Department's policy of wait-listing incompetent detainees. Instead, the Plaintiffs brought and moved for summary judgment on a facial challenge to the Department's policy of wait-listing incompetent detainees before admitting them to state hospitals for competency-restoration treatment. A party who brings a facial challenge must establish that the statute or policy, by its terms, always operates unconstitutionally. *See Garcia*, 893 S.W.2d at 518. In contrast, under an as-applied challenge, a plaintiff must demonstrate that a statute or policy, while generally constitutional, operates unconstitutionally as to him because of his particular circumstances. *Id*. at 518 n.16. Thus, the sole issue before this Court is whether the Plaintiffs established that there is no set of circumstances under which the Department's maintenance of the List is constitutional. For the following reasons, we determine that the Plaintiffs did not meet this burden.

First, the Plaintiffs have failed to demonstrate that the List operates in an unconstitutional manner as to every detainee on the List. As previously explained, Chapter 46B prohibits a trial court from ordering an incompetent defendant to outpatient treatment if it is determined that he is a danger to others. Tex. Code Crim. Proc. art. 46B.072. Accordingly, these defendants are necessarily subject to inpatient commitment and, consequently, to placement on the List. However, when a committed detainee on the List is a danger to others, his continued confinement is justified separate and apart from the state's interest in restoring his competency. *See Salerno*, 481 U.S. at 747-48. Similarly, if a pretrial detainee on the List is a flight risk he may be held without

17

bail, notwithstanding any failure by the state to provide competency-restoration treatment. *See Bell*, 441 U.S. 520 at 536-37. The Plaintiffs have failed to establish that, under the Department's policies and procedures, all incompetent detainees on the List are detained based *solely* on a need for competency-restoration treatment. *See Jackson*, 406 U.S. at 738. Because some incompetent detainees may also be detained for independent, constitutionally-sound reasons, the List may operate in a constitutional manner as to their prolonged detainments, despite any lack of prompt treatment.

Second, the Plaintiffs have failed to demonstrate that the List operates in an unconstitutional manner as to every length of detainment under the List. The undisputed evidence demonstrates that all detainees on the List must wait at least some period of time before receiving any competency-restoration treatment. Under *Jackson*, this wait *may*, at some point, become unreasonably long, thus constituting a violation of the Due Process Clause and due course of law provision. However, the Plaintiffs do not point to any policy or procedure of the Department requiring incompetent detainees placed on the List to wait for a specified period of time. For example, there is no evidence that the List necessarily requires the Plaintiffs to wait at least twenty-one days, seven days, or even three days, before being accepted at a state hospital. Further, the Plaintiffs do not point to any constitutional problem created when an incompetent detainee on the List is transferred shortly after they are determined to be incompetent. The undisputed evidence demonstrates that when a bed becomes available under the List, the wait-listed detainee is accepted by the Department into a state hospital. And while the evidence shows that some incompetent detainees on the List must wait for long periods of time before being accepted by the Department, there is no evidence of any policy or procedure specifically designed to create a long wait. Any

18

unreasonable delay in transfer is a consequence of circumstances, not of any Department policy or procedure with regard to the maintenance of the List itself.

The Plaintiffs have failed to demonstrate that there is no set of circumstances under which the Department's maintenance of the List is constitutional. Instead, the undisputed facts demonstrate, as a matter of law, that the Department's practice of maintaining the List is not unconstitutional on its face. Therefore, the trial court erred in granting the Plaintiffs' motion for summary judgment and denying the Commissioner's motion for summary judgment on the Plaintiffs' facial challenge.[10] We sustain the Commissioner's first issue on appeal.[11]

---

[10] In its cross-motion for summary judgment, the Commissioner argued that its use of the List does not, as a matter of law, violate the Plaintiffs' constitutional rights. The Commissioner asserted that "the nature and duration of the Plaintiffs' confinement in jail while awaiting an available bed is rationally related to the state's objective of providing equitable access to the state's limited mental health services." We interpret this as an argument that, even if an incompetent detainee has a constitutional right to promptly receive competency-restoration treatment, the undisputed evidence establishes that the Department's maintenance of the List does not, on its face, violate this right. We agree.

[11] In its second issue on appeal, the Commissioner challenges the propriety of the trial court's declaratory and injunctive relief, which imposed a twenty-one-day deadline on the Department to accept an incompetent detainee into the state hospital system. The Plaintiffs' right to equitable relief depends on the success of their constitutional challenge. *See Hanson Aggregates W., Inc. v. Ford*, 338 S.W.3d 39, 44 n.6 (Tex. App.—Austin 2011, pet. denied) (noting general rule that permanent injunction must be predicated on jury findings or conclusive evidence establishing at least one valid cause of action). Having concluded that the Plaintiffs cannot prevail, as a matter of law, on their constitutional challenge, we do not reach the Commissioner's second issue, except to the extent we vacate the trial court's grant of injunctive relief.

In its third issue on appeal, the Commissioner asks us to reconsider our conclusion in *Lakey I* that the Plaintiffs have standing to bring this suit. The decision to revisit a previous holding in a case is generally left to the discretion of the court under the particular circumstances of a given case. *City of Houston v. Jackson*, 192 S.W.3d 764, 769 (Tex. 2006). Without commenting on the propriety of this Court's holding in *Lakey I*, we decline to exercise our discretion to reconsider the Plaintiffs' standing.

19

**CONCLUSION**

It is important to note once again that we have not been asked to decide whether any individual plaintiff's constitutional rights were violated as a result of a delay between the criminal court's determination of incompetency and the incompetent detainee's transfer to a mental health facility for competency restoration. There is little question that some of the facts presented to the trial court raise serious concerns with regard to how some mentally-ill detainees were treated during this interim time period.[12] However, we, as a court of law, cannot be persuaded to take our focus off of the sole legal issue presented in this case—a facial constitutional challenge to a waiting list scheme—because of arguably "bad facts." As Oliver Wendell Holmes recognized,

> Great cases, like hard cases, make bad law. For great cases are called great, not by reason of their real importance in shaping the law of the future, but because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment. These immediate interests exercise a kind of hydraulic pressure which makes what previously was clear seem doubtful, and before which even well settled principles of law will bend.

*Northern Secs. Co. v. United States*, 193 U.S. 197, 400-401 (1904) (Holmes, J., dissenting).

Bad facts often create bad law. However, as a Court we must guard against the creation of bad law in an effort to remedy a particularly thorny factual scenario, especially when evaluating the parameters of the constitution and the rights created thereunder. *See County of Dallas v. Wiland*, 216 S.W.3d 344, 359 (Tex. 2007) (discussing parameters of due process).

---

[12] These facts are not relevant to the disposition of the Plaintiffs' facial challenge, so we have not included them in our analysis. *See* Tex. R. App. P. 47.1 (courts of appeals must hand down written opinions that are as brief as practicable).

The Plaintiffs raised solely a facial challenge to the List at issue and, at the time the trial court rendered judgment, made no as-applied challenges on behalf of the individual plaintiffs. Because we conclude that the List is not unconstitutional on its face, we are left with no other option but to reverse the trial court's judgment, vacate the trial court's permanent injunction, and render judgment in favor of the Commissioner.

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Vacated and Rendered

Filed: May 2, 2014