

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00664-CV

Stephen **TORRES**,
Appellant

v.

**CITY OF SAN ANTONIO**,
Appellee

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-13430
Honorable Stephani A. Walsh, Judge Presiding

Opinion by: Rebeca C. Martinez, Justice

Sitting: Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed: December 7, 2016

REVERSED AND REMANDED

Stephen Torres appeals the trial court's order granting summary judgment in favor of the

City of San Antonio. Torres sued the City under the Texas Whistleblower Act after he was passed

over for a lieutenant position in the Arson department. He alleged the City retaliated against him

because he filed an internal report of wrongdoing two years before applying for the position. The

City moved for summary judgment, arguing it was entitled to judgment as a matter of law because

Torres failed to present a genuine issue of material fact establishing the alleged adverse

employment action would not have occurred "but for" his making a "good faith" report of the

illegal activity. We reverse the trial court's judgment and remand the cause for further proceedings.

## BACKGROUND

Torres worked in various positions at the San Antonio Fire Department (SAFD) for more than 17 years. On June 18, 2009, while assigned to the Arson division, Torres observed Joe Rios, a former Arson Investigator, using Arson/peace officer credentials to access a secure area of the San Antonio Police Department (SAPD) building. Upon investigating, Torres was told that another former Arson investigator, Art Villarreal, also had active Arson/peace officer credentials. Because Rios and Villarreal were supposed to turn in their Arson credentials when they transferred out of the Arson department, Torres believed that Rios and Villarreal were purposely breaking the law. Torres believed the improper use of credentials to be a violation of department policy as well as a Texas Penal Code violation and immediately relayed his concerns to his supervising captain, Christopher Casals, via text message.

Five days later, Torres submitted a written memo to Deputy Chief Rodney Hitzfelder detailing what he witnessed on June 18, 2009. In the memo, Torres stated he had been told that Rios and Villarreal were allowed by Assistant Chief Noel Horan to maintain their peace officer commissions to investigate firefighter fatalities as fire department safety officers. But Torres went on to note that article 2.12 of the Code of Criminal Procedure, which defines "peace officers," does not include fire department safety officers. The memo also referenced Section 37.12 of the Texas Penal Code, False Identification as Peace Officer. Believing that no action was being taken in response to his complaints to Casals and Hitzfelder, Torres filed a report with the Office of Municipal Integrity (OMI) two days after submitting the memo to Hitzfelder.

After an investigation, OMI discovered that Rios held credentials that erroneously listed him as being assigned to Arson and also listed a badge number that had already been assigned to

his replacement in Arson.  In addition, the OMI investigation revealed that SAFD Chief Charles Hood was aware that the commissions on Villarreal and Rios were being maintained, because he approved them; Chief Hood, however, was unaware that public law only allows Arson investigators to be commissioned.  Ultimately, OMI labeled Torres's allegation as "unfounded." "Although OMI could not validate the presence of fraud, the existing process by which SAFD personnel outside of the Arson unit are allowed to maintain their peace officer status was reevaluated to establish a process that would not violate existing policy or penal code as suggested in the complaint [filed by Torres]."  Accordingly, the process changed by having Chief Hood, rather than San Antonio Police Chief William McManus, sign the credentials.  Two months later, Torres requested that he be transferred out of Arson, citing health issues and a deteriorating relationship with Casals.

In 2012, Torres was working as a lieutenant in a fire suppression unit and applied for a lateral transfer to Arson.  Although the Arson lieutenant position would be a lateral transfer, it paid $450 more per month than he was currently earning and included other benefits, such as a take home vehicle, city phone, and city computer.  Torres was one of two people to interview for the position before a panel that would recommend a candidate to Assistant Chief Earl Crayton, who would then pass the selection to Chief Hood for a final decision.  The panel included Casals and two other Arson supervisors, Lieutenant Kenneth Campbell and Acting-Lieutenant Anthony Guerrero.  The other candidate was James Bennett.

At the time of the interview, Torres was a certified firefighter advanced, fire officer II, fire service instructor II, field examiner, and Arson investigator advanced.  He was also an intermediate peace officer.  Torres had been a lieutenant for 11 years; Bennett had been a lieutenant for less than one year and still needed to complete the police academy.

Guerrero and Casals recommended Bennett for the position, while Campbell recommended Torres due to his law enforcement experience and the fact that he was already certified. Though the panel was impressed with Torres's resume and experience, Chief Hood testified that based on his knowledge of Torres's time in Arson, he would not have assigned Torres the position even if the panel had recommended it. Casals also testified that he did not recommend Torres, in part, because of the way Torres handled the complaint about unauthorized credentials.

After learning that he had not been selected for the Arson lieutenant position, Torres filed a complaint with the City alleging that he was discriminated against by Casals due to his race/national origin. The City's investigation did not find discrimination against Torres. Two weeks later, Torres filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that he was passed over for the position due to his national origin. Torres also filed a complaint with the Texas Commission on Law Enforcement Officer Standards and Education (TCLEOSE) again alleging that Villarreal and Rios were inappropriately maintaining peace officer credentials, though TCLEOSE declined to investigate further.

Thereafter, Torres filed the underlying suit claiming that the City retaliated against him for filing the OMI complaint in violation of the Texas Whistleblower Act. The City moved for summary judgment and Torres filed a response. The trial court granted the City's summary judgment motion. Torres timely appealed.

## STANDARD OF REVIEW

Summary judgment is proper when the summary-judgment evidence shows that there are no disputed issues of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). To obtain traditional summary judgment on an opposing party's claims, the movant must conclusively negate at least one essential element of each of the plaintiff's claims. *See Lakey v. Taylor*, 435 S.W.3d 309, 316 (Tex. App.—Austin 2014, no pet.) (citing *Centeq*

*Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)).  This court reviews a grant of summary judgment de novo.  *Bank of America, N.A. v. Prize Energy Resources, L.P.*, No. 04-13-00201-CV, 2014 WL 4257865, at *4 (Tex. App.—San Antonio Aug. 29, 2014, pet. denied).  In reviewing entry of summary judgment, this court considers the evidence presented in the motion and response in the light most favorable to the non-moving party, "crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 468 S.W.3d 557, 566 (Tex. App.—San Antonio 2014, pet. denied) (quoting *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009)).

## TEXAS WHISTLEBLOWER ACT

The Texas Whistleblower Act provides that a public employee may not be retaliated against for reporting a violation of the law:

> A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

TEX. GOV'T CODE ANN. § 554.002(a) (West 2012).  Thus, to establish a violation of the Texas Whistleblower Act, a plaintiff must allege the following elements: (1) she was a public employee; (2) she made a good faith report of a violation of law by her employing governmental entity or another public employee; (3) she made the report to an appropriate law-enforcement authority; and (4) she suffered retaliation as a result of making the report.  *Tex. Comm'n on Envt'l. Quality v. Resendez*, 450 S.W.3d 520, 522 (Tex. 2014) (per curiam).

## DISCUSSION

In its motion for summary judgment, the City challenged the elements of "good faith" (second element) and causation (fourth element).

***Good Faith***

"'Good faith' means that (1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience." *Bexar County v. Lopez*, 94 S.W.3d 711, 714 (Tex. App.—San Antonio 2002, no pet.) (quoting *Wichita County v. Hart*, 917 S.W.2d 779, 784 (Tex. 1996)). Whether a public employee believes that conduct he reports is a violation of law is subjective, while the second element, i.e., the reasonableness of that belief in light of the employee's training and experience, is objective and ensures that the claimant receives the Act's protection only if a reasonably prudent employee in similar circumstances would have believed that the facts as reported were a violation of the law. *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Gentilello*, 398 S.W.3d 680, 682–83 (Tex. 2013).

In his Original Petition and Request for Disclosure, Torres alleged that at the time he reported Rios badging in with his Arson/peace officer credentials, he believed such activity was unlawful and his belief was reasonable. In its motion for summary judgment, the City argued Torres's OMI report was not made in good faith, but rather, was made "to shield Torres from the consequences of unilaterally causing the credentials of Villarreal and Rios to be cancelled, and then lying about it when directed to provide a statement to his superiors about his activities." In his affidavit, Villarreal averred that after Torres sent the text message to Casals, Casals called Villarreal to determine why he and Rios still had their Arson credentials. Villarreal told Casals they were maintaining their credentials at the direction of Chief Hood and Deputy Chief Neil Horan so that they could investigate on-duty deaths of SAFD personnel. Villarreal then contacted TCLEOSE and the Texas Commission on Fire Protection, which informed him that Rios and Villarreal could keep their credentials with Chief Hood's approval. A week after the phone call from Casals, Villarreal discovered his and Rios's identification cards no longer worked. Villarreal

spoke with a civilian employee at the SAPD main building, who informed him that Torres had told her to shut off Rios's and Villarreal's access cards because they were not in Arson and should not have them. Villarreal reported the incident to Horan and Hitzfelder. In light of these facts, the City claims that at the time Torres made his report, SAFD was already investigating the matter and Torres knew Chief Hood had approved Villarreal and Rios maintaining their Arson credentials. Thus, the City argues Torres had no subjective basis on which to believe fraud was occurring. The City also argues Torres's belief could not have been objectively reasonable because another firefighter in Torres's position with the same training, background, and personal relationships with Villarreal and Rios would have contacted the two well-respected men to inquire about the facts before reporting to Casals.

In Torres's response to the motion for summary judgment, he contends his OMI report was made in good faith: he personally witnessed the fraudulent conduct and cited the statute he believed to be violated. Attached to Torres's response were numerous exhibits, including excerpts from the depositions of Torres, Casals, Campbell, Guerrero, and Chief Hood, as well as Torres's affidavit. In his deposition, Torres testified he did not confront Villarreal and Rios directly because he would have had to arrest the men, it would have been outside his chain of command, and would require reporting in any case. Additionally, OMI policy prohibits discussing facts or suspicions with others. Torres further testified he never deactivated Rios's and Villarreal's identification cards and was never told or made aware he was being investigated over the supposed deactivation incident. Torres also testified that he went to OMI because Casals and Hitzfelder did not follow up after he reported. "When I wrote that report to Hitzfelder, nothing happened. . . . We never heard anything. We never heard that Chief Horan and Chief Hood said that it was okay for them to have these credentials." Because Torres had heard nothing more than "rumors" that Villarreal and Rios were authorized to carry their Arson credentials, he decided to contact OMI.

Torres's summary judgment response cites to evidence showing that other employees within the Arson department would have made a similar complaint had they witnessed the activity in question. Campbell testified that Torres had a good-faith belief about the OMI complaint and that he "handled it the way he thought best at the time." Campbell confirmed that "when somebody left Arson, you turned in your credentials. . . . Everybody knew that." Guerrero likewise testified that it was routine to turn in your credentials upon leaving Arson. When asked if he believed Torres had a good-faith belief in making the complaint, Guerrero answered, "I can't answer to why his reasoning was, but he knew that up to that point, you couldn't keep your credentials. The only way that you were allowed to keep your credentials in the Arson office was because you were assigned to Arson." Guerrero further explained that had he witnessed Villarreal and Rios using their Arson credentials, he would have told his captain. He would have also asked Rios and Villarreal directly, and even if they had given him a valid reason for their keeping their credentials, he probably would have gone back to his captain and said, "I don't agree with it. You might want to look into it."

Based on Torres's response, and viewing the evidence as a whole in the light most favorable to Torres, we conclude a fact issue exists on the element of "good faith." Taking as true Torres's testimony that he was unaware of what became of his initial internal complaints to Casals and Hitzfelder, as well as the testimony from Campbell and Guerrero indicating that they would have also reported the incident in question to OMI, we hold a disputed fact issue exists as to whether Torres's decision to report to OMI was reasonable. Accordingly, the City did not conclusively negate the "good faith" element as a matter of law.

### *"But For" Causation*

A necessary element of a whistleblower claim is causation: that the employee suffered an adverse employment action because she reported a violation of the law in good faith to an

appropriate law-enforcement agency, although the employee's report need not be the sole reason for the adverse employment action. *Tex. Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 633-34 (Tex. 1995). To show causation, the employee must demonstrate that after she reported a violation of the law in good faith to an appropriate law-enforcement agency, the employee suffered discriminatory conduct by her employer that would not have occurred when it did if the employee had not reported the illegal conduct. *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 67 (Tex. 2000). In *Department of Human Services v. Hinds*, the Texas Supreme Court established a but-for causation standard in whistleblower actions: "[T]he employee's protected conduct must be such that, without it, the employer's prohibited conduct would not have occurred when it did." 904 S.W.2d at 636. Under this standard, the City cannot negate the causation element merely by showing that it had other reasons for not selecting Torres for the Arson lieutenant position. To the contrary, the but-for standard requires conclusive proof that Torres's OMI report did not play a role, however small, in the City's decision to not award the position to him. *See Ender v. City of Austin*, No. 03-97-00329-CV, 1997 WL 658986, at *3 (Tex. App.—Austin Oct. 23, 1997, no pet.).

In its motion for summary judgment, the City put forth a host of reasons why Torres "cannot meet his burden to prove causation." The City alleged: Torres provided no evidence showing any retaliatory action in the over two years subsequent to his making the report and prior to the non-selection; Bennett was legitimately selected for the position based on the merits of his application and interview performance;[1] Casals legitimately preferred Bennett to Torres; the non-selection was warranted based on Torres's past misconduct; and Torres was not credible and changed his story of non-selection from discrimination to whistleblowing.

---

[1] The City did not dispute that Torres was more qualified than Bennett in that Bennett lacked certain certifications necessary to perform the job.

In his summary judgment response, Torres relied on evidence that Chief Hood and Casals both stated Torres's credential complaint was the reason Torres was not selected for the Arson lieutenant position. The ultimate decision-maker regarding the position Torres applied for was SAFD Chief Charles Hood. Although Chief Hood testified that Torres was not selected for the position because of his "lack of leadership, his impulsiveness, his not understanding the chain of command, his dealing with the media without authorization, his impulsivity to go to OMI without going through the chain of command," he also acknowledged that the interview panel considered Torres's OMI report as a factor in its decision-making process. Hood testified that Torres's complaint "should never have gone to OMI."

Similarly, Campbell testified that Casals brought up Torres's OMI report during the selection process. Campbell told Casals he "couldn't use this against Steve." In response, Casals said, "Steve launched that investigation, he nearly cost me my job." Campbell testified he believed Torres and Casals had a "tense" relationship due to the OMI fraudulent credential investigation. Campbell further testified that Torres was more qualified for the position than Bennett because he was already certified and had law enforcement experience.

Although the City offered several reasons why Torres was not selected for the position in question, we are mindful of the fact that Torres was not required to prove that his reporting of the fraudulent credentials was the sole reason for his non-selection. Based on the foregoing, there is some evidence in the summary judgment record that both Chief Hood and Casals considered the fact that Torres reported the misuse of credentials to OMI when considering whether to select him for the Arson position. Thus, viewing the entire record in the light most favorable to Torres, we conclude the City did not negate causation as a matter of law.

## CONCLUSION

Having sustained Torres's issues on appeal, we reverse the trial court's order granting summary judgment and remand the cause to the trial court for further proceedings.

Rebeca C. Martinez, Justice